## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

---------------------------------------------------------------------------

)
)
HAYLEY AMIEL, *on behalf of herself and all* )
*others similarly situated*, )
)
)
Plaintiffs, )
)
v. )
)
)
QR JOY, INC., and QR JOY FUME, LLC, )
)
Defendants. )
)

---------------------------------------------------------------------------

Case No. 025-cv-

**CLASS ACTION COMPLAINT**

<u>JURY TRIAL DEMANDED</u>

## <u>PREAMBLE</u>

Plaintiff Hayley Amiel ("Plaintiff" or "Amiel") brings this action on behalf of herself and all others similarly situated who purchased Fume electronic cigarettes ("e-cigarettes" or "vapes") during the class period ("Class members"). Plaintiff Amiel alleges that Defendants QR Joy, Inc. and QR Joy Fume, LLC ("QR Joy," "Qrjoy," or "Defendants") have marketed and advertised e-cigarettes containing nicotine, sold under the brand name of Fume, in a misleading and deceptive manner. Plaintiff alleges the following based upon the investigation of her counsel and upon information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge

## <u>NATURE OF THE ACTION</u>

1.     This action challenges the deceptive marketing practices employed by QR Joy regarding the nicotine strength of Fume vapes. QR Joy's misleading use of "5%" nicotine labels are intentionally ambiguous and lack transparency, causing consumers to underestimate the nicotine potency of these vape products and believe that their use is unlikely to result in addiction.

2.      QR Joy deliberately targets its marketing toward young people, a group particularly vulnerable to targeted advertising. This conduct is deceptive, as individuals under the age of 21 are prohibited from purchasing e-cigarettes. Despite this legal restriction, young consumers can easily purchase the product online due to QR Joy's failure to implement meaningful age verification measures. Many young users, once exposed, become addicted to nicotine and face substantial difficulty quitting due to its highly addictive nature.

3.      Additionally, QR Joy markets and sells Fume e-cigarettes in the United States, despite these products not being authorized for sale by the Food and Drug Administration ("FDA").[1] This practice misleads consumers into believing that flavored Fume vapes are legally available in the U.S.

4.      QR Joy's conduct violates consumer protection law, constitutes a breach of an implied warranty of merchantability, and results in unjust enrichment.

## **INTRODUCTION**

5.      Traditional tobacco products are becoming less popular as consumers have become aware of the harmful health effects of traditional combustion cigarettes.[2]

6.      Many consumers have turned to electronic cigarettes, or vapes, for nicotine enjoyment.

---

[1] This litigation does not challenge Qrjoy's actions before the FDA; the information is provided as background to illustrate how Qrjoy's marketing to consumers is deceptive.

[2] Ilena Peng, *Cigarette Smoking in the U.S. Drops to Lowest Level Since 1965*, Time (May 4, 2023), https://time.com/6277263/cigarette-smoking-lowest-level/.

2

CLASS ACTION COMPLAINT

*Amiel et al., vs. QR Joy, Inc. et al.,*

7.      Fume has emerged as a significant player in this market, generating $42 million in sales in the U.S. during the third quarter of 2023.[3]

8.      Consumer interest and demand for Fume vapes has risen because of "5%" nicotine labels prominently shown on the product packaging shown below.



9.      Representations of and lack of transparency around the "5%" nicotine labels mislead reasonable consumers into believing that the nicotine strength and addictive potential of the product is low, lower, or significantly less than that of combustible cigarettes or other nicotine delivery devices. This misconception causes consumers to underestimate Fume's addictive nature.

---

[3] Matthew Perrone, *US Seizes More Illegal E-Cigarettes, But Thousands More of New Ones Are Launching*, AP News (Dec. 30, 2023), https://apnews.com/article/ecigarettes-elf-bar-fda-teen-vaping-imports-be95ce8a7942619c5b60f40a37bb9cf5.

[4] *Products: Extra,* Fume Vapors, https://fumevapors.com/products/extra (last visited Apr. 8, 2025).

3

CLASS ACTION COMPLAINT

*Amiel et al., vs. QR Joy, Inc. et al.,*

10.    Fume's popularity is also driven by QR Joy's misleading and aggressive marketing targeting young people, despite the fact that it is illegal to sell vapes to individuals under twenty-one years of age. Fruity and sweet flavor options, which have been shown to attract young adult buyers, are central to Fume's appeal. The product is available in 47 flavors[5] with enticing descriptions such as tropical fruit and pina colada.

- o   Mango Mint (NEW): Juicy mango with a cool mint twist.
- o   Lush Mint (NEW): Refreshing watermelon with a minty breeze.
- o   Ice Matcha (NEW): Creamy matcha with an icy finish.
- o   Miami Tropicana (NEW): A tropical fruit mix with a cool kick.
- o   Dragon Papaya (NEW): Exotic dragon fruit and papaya fusion.
- o   Apple Skittle: Sweet and tangy candy apple.
- o   Banana Ice: Creamy banana with a cool exhale.
- o   Black Ice: Bold blackberry with an icy touch.
- o   Blue Razz: Sweet and tart blue raspberry.
- o   Blue Berry CC: Rich blueberry with a creamy hint.
- o   Blueberry Guava: Sweet blueberry blended with tropical guava.
- o   Blueberry Mint: Juicy blueberry with a refreshing minty finish.
- o   Bubble Gum: Classic sweet bubble gum flavor.
- o   Clear: Clean, pure, and flavorless.
- o   Coffee Tobacco: Robust coffee with a smooth tobacco finish.
- o   Cotton Candy: Light and fluffy carnival sweetness.
- o   Cuban Tobacco: Rich, traditional Cuban tobacco flavor.
- o   Desert Breeze: A refreshing, cool desert blend.
- o   Double Apple: Crisp and juicy red and green apple.
- o   Fresh Lychee: Sweet and fragrant lychee burst.

---

[5] *Fume Ultra,* Fume by Qrjoy, https://fume.com/products/fume-ultra-2500-vape-shop (last visited Apr. 8, 2025).

CLASS ACTION COMPLAINT

4904-7015-5573, v. 1

○ Fresh Vanilla: Smooth and creamy vanilla delight.

○ Grape: Juicy and sweet grape flavor.

○ Grapefruit Kiwi: Tangy grapefruit with a kiwi kick.

○ Gummy Bears: Sweet, fruity gummy candy goodness.

○ Hawaii Juice: Tropical fruit medley with a juicy finish.

○ Lush Ice: Sweet watermelon with a chilly exhale.

○ Mango: Pure, juicy mango sweetness.

○ Melon Ice: Refreshing melon with a cool touch.

○ Mint Ice: Classic mint with an icy chill.

○ Miami Mix: A vibrant mix of tropical fruits.

○ Miami Mint: Minty freshness with a tropical twist.

○ Paradise: A blissful blend of exotic fruits.

○ Peach Ice: Sweet peach with a frosty exhale.

○ Pina Colada: Creamy coconut and pineapple cocktail.

○ Pineapple Ice: Tangy pineapple with a cool finish.

○ Pink Lemonade: Sweet and tart pink lemonade.

○ Purple Rain: A mixed berry explosion.

○ Rainbow Candy: A burst of colorful candy flavors.

○ Raspberry Watermelon: Juicy raspberry with sweet watermelon.

○ Strawberry: Ripe and juicy strawberry flavor.

○ Strawberry Banana: Smooth blend of strawberry and banana.

○ Strawberry Mango: Sweet strawberry meets juicy mango.

○ Strawberry Watermelon: Refreshing strawberry and watermelon mix.

○ Tangerine Ice: Zesty tangerine with an icy twist.

○ Tropical Fruit: A vibrant tropical fruit medley.

○ Unicorn: A magical blend of mixed fruits.

○ Yogurt Ice Cream: Creamy yogurt with a sweet, frosty finish.

*Amiel et al., vs. QR Joy, Inc. et al.,*

11.     Additionally, Fume's marketing prominently features attractive young adults appearing comfortable in social situations—tactics that have been demonstrated to resonate strongly with this demographic.



⁶     Official   Fume   Vapors   (@fumevapors),   Instagram   (October   26,   2022), https://www.instagram.com/p/CkMKOQBycDw/?img_index=1.

⁷     Fume   Vapes   by   Qrjoy   (@fume_Qrjoy),   TikTok   (Sep.   27,   2022), https://www.tiktok.com/@fume_Qrjoy/video/7148078305885834542?lang=en.

CLASS ACTION COMPLAINT

*Amiel et al., vs. QR Joy, Inc. et al.,*




12.     The advertising, therefore, is misleading about a material fact—that youth and young adults cannot purchase the vapes legally.

13.     QR Joy also markets and sells Fume e-cigarettes across the Unites States, despite these products not being authorized for sale by the FDA. This practice misleads consumers into believing that flavored Fume vapes are legally available for purchase when they are, in fact, banned.

---

[8]     Official Fume Vapors (@fumevapors), Instagram (Dec. 10, 2024), https://www.instagram.com/p/DDaf1h0Nv1s/.

[9] *Revolutionizing the World of Vaping*, Fume by Qrjoy, https://byQrjoy.com/ (last visited Apr. 8, 2025).

CLASS ACTION COMPLAINT

14.     Defendants' actions violate business and consumer law and constitute a breach of an implied warranty of merchantability. Plaintiff Amiel brings this class action on behalf of herself, and all others similarly situated, seeking equitable and monetary relief.

## PARTIES

15.     In a press release, Defendant QR Joy describes itself as "an authentic manufacturer of retail vaping products," "renowned for patented electronic cigarette devices of the highest quality and most tantalizing flavors."[10] QR Joy's "years of industry experience, combined with a process that stresses continuous improvement, results in a best-in-class vape product that competes globally. There's guaranteed excellence inside when the QR Joy name is on the label."[11]

16.     Fume is "an authentic QR Joy product" and is available in various models, including Fume Extra, Fume Ultra, Fume Infinity, and Fume Mini, among others.[12]

17.     On its website, QR Joy prides itself on its Fume product line: "we've crafted products that harmonize bold flavors, sleek designs, and the electrifying spirit of the dance floor."[13]

18.     QR Joy's principal place of business is located at 1790 SW 30th Ave, Hallandale, Florida 33009. The President and Vice President of the company are located in Hollywood, Florida.

19.     Defendant QR Joy Fume is a limited liability company with headquarters located 3389 Sheridan Street, Suite 196, Hollywood, Florida 33021.

---

[10] *Qrjoy Shines on International Stage at Alternative Products Expo*, PR Newswire (May 25, 2022), https://www.prnewswire.com/news-releases/qr-joy-shines-on-international-stage-at-alternative-products-expo-301555203.html.

[11] *Id.*

[12] *Id.*

[13] *RNBW / Fume Vapors*, Fume by Qrjoy, https://www.fumevapors.com/rnbwxfume (last visited Apr. 8, 2025).

CLASS ACTION COMPLAINT

*Amiel et al., vs. QR Joy, Inc. et al.,*

20.     Together, the Defendants design and manufacture Fume vapes and create all related marketing materials. While part of the manufacturing process may take place in China—a common practice for American vapes—QR Joy retains ownership and oversees all aspects of the design, materials, packaging, marketing, and other decisions regarding Fume vapes. As such, QR Joy is ultimately responsible for the final product and its representations.



21.     Defendants advertise and sell Fume vapes nationwide via its website.[14]

---

[14] *We Don't Vape We Fume*, Fume by Qrjoy, https://fume.com/collections/all-products (last visited Apr. 8, 2025).

9

CLASS ACTION COMPLAINT

*Amiel et al., vs. QR Joy, Inc. et al.,*



15

---

[15] *See id.*

4904-7015-5573, v. 1

*Amiel et al., vs. QR Joy, Inc. et al.,*



22.    The website noted above is an official website for Fume, as shown below.



---

[16] *Id.*
[17] *Id.*

11
CLASS ACTION COMPLAINT

*Amiel et al., vs. QR Joy, Inc. et al.,*

23.     Defendants market, sell, and encourage the sale of Fume vapes in retail stores in Florida, around the country, and through resellers.

24.     Defendants also market Fume vapes to consumers nationwide via their social media pages.[18]

25.     Plaintiff Amiel is a citizen of the State of New York and a resident of Rockland County. At all times mentioned herein, Plaintiff Amiel was and is an individual consumer over the age of 18.

26.     Plaintiff Amiel purchased Fume Ultra and Fume Extra products in the following flavors: Pina Colada, Strawberry Mango, Mango, Rainbow Candy, Tropical Fruit, Unicorn, Strawberry Banana.

27.     Plaintiff Amiel purchased these QR Joy's vapes twice a week from 2020 through 2022, and once a week from January 2023 to March 2023.

28.     Plaintiff Amiel purchased Fume vapes at the following locations: Ivy Stationers, 14 Thiells Mt. Ivy Road, Unit 7, Pomona, NY 10970; Zava Flow Inc., 38-40 N. Middletown Road, Nanuet, NY 10954; Wildwood Boardwalk, Wildwood, NJ 08260; New City Smoke, 224 S. Main Street New City, New York 10956; and at the Finest Vape & Smoke Shop 259 S. Little Tor Road New City, New York 10956.

29.     Plaintiff Amiel, like many young adults, was attracted to Fume vapes because of the variety of flavors offered, as well as the general marketing towards young people.

30.     Plaintiff Amiel, when she purchased Fume vapes, saw and believed that they in

---

[18] Official Fume Vapors (@fumevapors), Instagram, https://www.instagram.com/fumevapors/ (last visited Apr. 8, 2025).

CLASS ACTION COMPLAINT

4904-7015-5573, v. 1

general, were legal for sale.

31.     Plaintiff Amiel, when she purchased the Fume vapes, saw and believed that they were lower in nicotine and less addictive than they actually were based on the fact that they were marketed as containing 5% nicotine.

32.     Plaintiff Amiel is a user of vaping devices. Like so many young people, she became hooked on these products without knowing their dangers. Because of QR Joy's deceptive marketing, she became a consumer without fully comprehending that she was beginning an addictive habit. Plaintiff Amiel, while working hard to discontinue vaping, remains a consumer and intends to keep purchasing vapes. She has a strong interest in having full disclosure regarding the Fume vapes. Plaintiff Amiel wishes to be able to make the best choices among e-cigarettes, in terms of health dangers, accurate description of nicotine, tendency for increased addiction through the use of flavors, and price.

33.     On January 24, 2025, Plaintiff sent presuit notice of her and Class Members' claims to Defendants.

## JURISDICTION AND VENUE

34.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act ("CAFA").  There are more than 100 members in the proposed class and the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

35.     Plaintiff consents to this Court's jurisdiction.

36.     This Court has general jurisdiction over Defendants, as they are residing in, located in, and doing business in Florida, or otherwise purposefully avails themselves of the laws of

CLASS ACTION COMPLAINT

*Amiel et al., vs. QR Joy, Inc. et al.,*

Florida through their marketing and sales there.

37.     Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading marketing and advertising regarding the nature of the products and sales of the products at issue, occurred within this District. The Defendants are also located in this District.

## FACT ALLEGATIONS

**I.    QY Joy's "5%" Nicotine Labeling Is Deceptive and Misleads Consumers Regarding the Nicotine Strength and Addictive Potential of Fume Vapes.**

38.     QR Joy's advertisements and packaging for Fume vapes display large "5%," and "5% nicotine" representations, referring to nicotine levels.

[19]

---

[19] *Products: Extra,* Fume Vapors, https://fumevapors.com/products/extra (last visited Apr. 8, 2025).

4904-7015-5573, v. 1

39.     QR Joy's misleading use of "5%" nicotine labels are intentionally ambiguous and omit material information, causing consumers to underestimate the nicotine potency of these vape products and believe that their use is unlikely to result in addiction.

40.     These labels are ambiguous because they lack further explanation; on their own, the 5% labels suggest a low amount of nicotine.

41.     Sarper Taskiran of the Child Mind Institute explains the concern about Defendants' style of e-cigarette marketing: "It's not transparent at all. It says 5% nicotine, which sounds like nothing, so teens think 95% is water weight or vapor."[20]

42.     A 5% nicotine concentration is not weak or low; it represents a strong dose of nicotine. In many countries, including Great Britain[21] and those in the European Union,[22] 5% nicotine levels are not legally available due to safety regulations. Instead, the maximum allowable concentration is typically set at 20 mg/mL (2%) to prevent health risks associated with high nicotine intake.

43.     This restriction reflects the risks posed by modern vaping devices designed with nicotine salts. Nicotine salts, like those used in Fume vapes, are more easily inhaled compared to traditional tobacco products because their lower pH reduces harshness and throat irritation.[23] Additionally, nicotine salts enable faster absorption into the bloodstream, meaning users receive

---

[20]     Katherine Martinelli, *Teen Vaping: What You Need to Know*, Child Mind Inst., https://childmind.org/article/teen-vaping-what-you-need-to-know/ (last visited Apr. 8, 2025).

[21]     *E-cigarettes: Regulations for Consumer Products*, Gov.UK (Feb. 29, 2016), https://www.gov.uk/guidance/e-cigarettes-regulations-for-consumer-products.

[22]     Barnaby Page, *The EU Tobacco Products Directive (TPD): Essential Facts*, ECigIntelligence (May 19, 2016), https://ecigintelligence.com/tpd-essential-facts/.

[23]     *Pass the Salt: Why Nicotine Salts Make Vaping Products More Addictive,* Physicians for a Smoke-Free Canada (Feb. 2020), https://smoke-free.ca/wp-content/uploads/2020/04/Nicotine-Salts-1.pdf [hereinafter *Pass the Salt*].

more nicotine into their systems compared to freebase nicotine at the same concentration.[24] This combination of ease of inhalation and rapid nicotine delivery creates a high-nicotine experience that feels less harsh than smoking traditional tobacco products, significantly increasing their addictive potential and appeal.

44.     Studies indicate that a 3% nicotine salt (30 mg/mL) puff from an e-cigarette delivers nicotine levels equivalent to a traditional combustible cigarette.[25] A 5% nicotine salt e-cigarette delivers significantly more nicotine.[26] Despite this, QR Joy fails to disclose such information to consumers or provide any meaningful explanation for the 5% labels on their products.

45.     The percentage-based nicotine labels are misleading to consumers because they fail to clearly convey the actual strength or physiological effects of the nicotine. Defendants exploit this ambiguity to foster nicotine dependency, thereby driving increased sales.

46.     According to two studies conducted in 2021, adult,[27] adolescent, and young adult[28] consumers have difficulty understanding nicotine concentrations presented as percentages.

47.     Users were more likely to underestimate rather than overestimate nicotine strength when presented with percentage-based nicotine labels.[29] Participants perceived concentrations

---

[24] Vinit V Gholap, et. al., *Nicotine Forms: Why and How Do They Matter in Nicotine Delivery From Electronic Cigarettes?*, 17 Expert Opin. Drug Delivery 1727 (2020).

[25] *Pass the Salt, supra* note 23.

[26] *Id.*

[27] Meghan E. Morean et. al., *Adults Who Use E-cigarettes Have Difficulty Understanding Nicotine Concentrations Presented as mg/mL and Percent Nicotine*, 120 Addictive Behav. 106965 (2021) [hereinafter Morean Adult Study].

[28] Meghan E. Morean et. al., *Adolescents and Young Adults Have Difficulty Understanding Nicotine Concentration Labels on Vaping Products Presented as mg/mL and Percent Nicotine*, Nicotine Tobacco Res. 1389 (2021) [hereinafter Morean Young Adult Study].

[29] *See* Morean Adult Study, *supra* note 27.

labeled in mg/mL as stronger and more addictive compared to equivalent concentrations labeled as a percentage.[30]

48.    Research has shown that the percent of nicotine does not accurately convey nicotine strength to users.[31] This is particularly true for new users, who may find it difficult to gauge the strength of nicotine delivery based solely on experience.

49.    These studies have raised concerns about inadvertent exposure to high nicotine levels.[32]

50.    The studies advocated for a "simplified nicotine concentration labeling system" to "improve public knowledge."[33]

51.    Even resources aimed at providing truthful information to e-cigarette users demonstrate the ambiguity of the representations, highlighting consumer confusion. Vaping360, a website designed to "provide accurate information about vaping and build a global community,"[34] contains an article attempting to explain the differences between vape concentrations and strength: "E-liquids come in strengths that start at zero nicotine and go up to over 50 mg/mL. You may have also seen nicotine strengths expressed as percentages instead of concentrations. All this can be confusing at first, but it doesn't have to be!"[35]

52.    The article goes on to explain the math needed to convert percentages to mg/mL.

---

[30] *See* Morean Adult Study, *supra* note 27; *see also* Morean Young Adult Study, *supra* note 28.

[31] Morean Adult Study, *supra* note 27.

[32] Morean Young Adult Study, *supra* note 28.

[33] Morean Adult Study, *supra* note 27.

[34] *Who We Are*, Vaping360, https://vaping360.com/about/ (last visited Apr. 8, 2025).

[35] *Nicotine Strengths: How to Choose What's Right for You*, Vaping360 (Feb. 8, 2024), https://vaping360.com/learn/nicotine-strengths-percentages/.

53.     Multiple comments in response to the article highlight the confusion, with questions like these:

"So is 5% a lot of nic salt in a 30ml bottle?";

"1st time i use 25mg/ml nicotine. Now i use 3.5% mg. Tell me witch is strong nicotine";

"I am sooo confused with all the infos., calculations mg, ml, % etc. Can i please know how many cigarettes have I « vaped » in the last 4 days approximately?" [36]

54.     The misleading representations lead users to believe they will not become addicted to e-cigarettes like Fume vapes.[37]

55.     The average consumer does not have a chemistry degree or experience in the formulation of synthetic nicotine.

56.     Although the Fume website and certain Fume vapes state that the vapes contain nicotine, such a statement does nothing to help consumers understand the strength of nicotine in the vapes, how it compares to traditional cigarettes, how much nicotine is absorbed, or its likely effect on them.

57.     Additionally, it provides no clarity for individuals attempting to use vapes as a smoking cessation tool. As shown below, QR Joy represents Fume vapes as intended for those trying to quit smoking. This representation is deceptive, as reasonable consumers would not expect that switching to Fume vapes could result in unknowingly consuming even more nicotine than they did while smoking cigarettes.

---

[36] *Id.*

[37] *See, e.g.*, Kathleen Raven, *Nicotine Addiction From Vaping Is a Bigger Problem Than Teens Realize*, Yale Med. (Mar. 19, 2019), https://www.yalemedicine.org/news/vaping-nicotine-addiction.

4904-7015-5573, v. 1

*Amiel et al., vs. QR Joy, Inc. et al.,*

Fume vapors are intended for adult smokers trying to quit. T[38]

58.     QR Joy misleads consumers by marketing its e-cigarettes as smoking cessation devices without providing any guidance on how to use them for this purpose. Research has shown that individuals who attempt to use e-cigarettes to quit smoking often compensate for lower nicotine concentrations by increasing their puff frequency and intensity to sustain their nicotine intake.[39] This behavioral adjustment indicates that simply lowering nicotine levels in e-cigarettes does not necessarily reduce dependence, as users may instinctively alter their vaping habits to achieve the same level of nicotine absorption. By omitting essential guidance on cessation, QR Joy misleads consumers about Fume vapes' ability to help them transition away from nicotine use.

59.     The amount of nicotine delivered into the bloodstream is a material fact for consumers. Nicotine is highly addictive and carries serious health risks, making transparent and accurate disclosure essential.[40]

60.     Because of QR Joy's misleading representations and lack of transparency surrounding the addictive nature of 5% nicotine, reasonable customers are misled.

---

[38] *Frequently Asked Questions,* Fume by Qrjoy, https://www.fumevapors.com/products/faqs (last visited Apr. 8, 2025).

[39] Sharon Cox, et. al., *The Time Course of Compensatory Puffing With an Electronic Cigarette: Secondary Analysis of Real-World Puffing Data With High and Low Nicotine Concentration Under Fixed and Adjustable Power Settings*, 23 Nicotine & Tobacco Rsch. 1153 (2021).

[40] Aseem Mishra et al., *Harmful Effects of Nicotine*, 36(1) Indian J. of Med. and Pediatric Oncology 24 (Jan.-Mar. 2015); *see also Health Effects of Vaping*, CDC (May 15, 2024), https://www.cdc.gov/tobacco/e-cigarettes/health-effects.html.

Class Action Complaint

**II.  Defendants' Advertising Targeting Young People is Misleading, Because the Sale of Electronic Cigarettes is Illegal to People Under 21.**

61.     Defendants' Fume marketing targets teenagers and young adults, despite the illegality of selling Fume vapes to people under 21 years of age anywhere in the country, including in this District and Plaintiff's domicile. The advertising, therefore, is misleading about a material fact—that young adults cannot legally purchase the Fume vapes.

62.     The Tobacco 21 Act (H.R. 2411), prohibits the sale of tobacco to individuals under 21 years of age.[41] Non-tobacco nicotine products, such as synthetic nicotine electronic cigarettes, are included in the prohibition.

63.     This federal prohibition is mirrored at the state level, with all states enforcing the same minimum age requirement for the sale of tobacco and nicotine products.

64.     Fume advertisements, notwithstanding the unambiguous legal mandate, target young people in various ways.

65.     One method is through flavors. Young people are attracted to flavors.[42]

66.     The data on this fact are staggering.[43] For example, in 2023, more than 2.1 million middle and high school students reported currently using e-cigarettes.[44] Almost nine in ten, or 87.6%, of those current users chose flavored e-cigarettes.[45]

---

[41] Tobacco 21 Act, Pub. L. No. 116-94, § 603, 133 Stat. 2534 (2019); *see also Tobacco 21,* FDA, https://www.fda.gov/tobacco-products/retail-sales-tobacco-products/tobacco-21, (last visited Apr. 8, 2025).

[42] *Flavored Tobacco Use among Youth and Young Adults*, Truth Initiative (June 28, 2021), https://truthinitiative.org/research-resources/emerging-tobacco-products/flavored-tobacco-use-among-youth-and-young-adults.

[43] See *id.*; *see also Results from the Annual National Youth Tobacco Survey 2022*, FDA (Dec. 20, 2022), archived at https://public4.pagefreezer.com/browse/FDA/01-11-2023T15:52/https://www.fda.gov/tobacco-products/youth-and-tobacco/results-annual-national-youth-tobacco-survey.

[44] *Results from the Annual National Youth Tobacco Survey 2023*, FDA (June 26, 2024), https://www.fda.gov/tobacco-products/youth-and-tobacco/results-annual-national-youth-tobacco-survey.

[45] *Id.*

CLASS ACTION COMPLAINT

67.     Nearly 81% of youth ages 12 to 17 who had ever used tobacco products reported that the first product they used was flavored.[46]

68.     QR Joy plays upon this attraction to sweet fruity flavors and sells Fume vapes in 48 different flavors.

---

[46] Truth Initiative, *supra* note 42.

*Amiel et al., vs. QR Joy, Inc. et al.,*



Introducing Fume Ultra: a premium vape with an 8ml flavor pod and a 1000mAh battery for up to 2500 puffs. Enjoy 5% nicotine strength and choose from 48 flavors, including 11 refreshing iced options. Experience 70% more enjoyment than the original—elevate your vaping with Fume Ultra.

**Flavor Description**                                                                  —

**Mango Mint (NEW):** Juicy mango with a cool mint twist.

**Lush Mint (NEW):** Refreshing watermelon with a minty breeze.

**Ice Matcha (NEW):** Creamy matcha with an icy finish.

**Miami Tropicana (NEW):** A tropical fruit mix with a cool kick.

**Dragon Papaya (NEW):** Exotic dragon fruit and papaya fusion.

**Apple Skittle:** Sweet and tangy candy apple.

**Banana Ice:** Creamy banana with a cool exhale.

**Black Ice:** Bold blackberry with an icy touch.

**Blue Razz:** Sweet and tart blue raspberry.

**Blue Berry CC:** Rich blueberry with a creamy hint.

**Blueberry Guava:** Sweet blueberry blended with tropical guava.

**Blueberry Mint:** Juicy blueberry with a refreshing minty finish.

**Bubble Gum:** Classic sweet bubble gum flavor.

**Clear:** Clean, pure, and flavorless.

**Coffee Tobacco:** Robust coffee with a smooth tobacco finish.

**Cotton Candy:** Light and fluffy carnival sweetness.

**Cuban Tobacco:** Rich, traditional Cuban tobacco flavor.

**Desert Breeze:** A refreshing, cool desert blend.

**Double Apple:** Crisp and juicy red and green apple.

**Fresh Lychee:** Sweet and fragrant lychee burst.

**Fresh Vanilla:** Smooth and creamy vanilla delight.

**Grape:** Juicy and sweet grape flavor.

**Grapefruit Kiwi:** Tangy grapefruit with a kiwi kick.

**Gummy Bears:** Sweet, fruity gummy candy goodness.

**Hawaii Juice:** Tropical fruit medley with a juicy finish.

**Lush Ice:** Sweet watermelon with a chilly exhale.

**Mango:** Pure, juicy mango sweetness.



**Melon Ice:** Refreshing melon with a cool touch.

**Mint Ice:** Classic mint with an icy chill.

**Miami Mix:** A vibrant mix of tropical fruits.

**Miami Mint:** Minty freshness with a tropical twist.

**Paradise:** A blissful blend of exotic fruits.

**Peach Ice:** Sweet peach with a frosty exhale.

**Pina Colada:** Creamy coconut and pineapple cocktail.

**Pineapple Ice:** Tangy pineapple with a cool finish.

**Pink Lemonade:** Sweet and tart pink lemonade.

**Purple Rain:** A mixed berry explosion.

**Rainbow Candy:** A burst of colorful candy flavors.

**Raspberry Watermelon:** Juicy raspberry with sweet watermelon.

**Strawberry:** Ripe and juicy strawberry flavor.

**Strawberry Banana:** Smooth blend of strawberry and banana.

**Strawberry Mango:** Sweet strawberry meets juicy mango.

**Strawberry Watermelon:** Refreshing strawberry and watermelon mix.

**Tangerine Ice:** Zesty tangerine with an icy twist.

**Tropical Fruit:** A vibrant tropical fruit medley.

**Unicorn:** A magical blend of mixed fruits.

**Yogurt Ice Cream:** Creamy yogurt with a sweet, frosty finish.

**Key Features:**

47

4904-7015-5573, v. 1

Case 0:25-cv-60710-WPD   Document 1   Entered on FLSD Docket 04/11/2025   Page 23 of 44

*Amiel et al., vs. QR Joy, Inc. et al.,*

69.     These flavors include options such as Apple Skittles, Gummy Bears, and Cotton Candy, which are designed to appeal to young people. Additionally, they are accompanied by enticing descriptions and photos, like those presented below, to further attract a younger audience.[48]

**Apple Skittle:** Sweet and tangy candy apple.

**Gummy Bears:** Sweet, fruity gummy candy goodness.

**Paradise:** A blissful blend of exotic fruits.



49

70.     QR Joy targets young people in other ways.

---

[47] *Fume Ultra 2500 Puffs*, Fume by Qrjoy, https://fume.com/products/fume-ultra-2500-vape-shop (last visited Apr. 8, 2025).

[48] *See id.*

[49] *Features*, Fume by Qrjoy, https://www.fumevapors.com/products/extra (last visited Apr. 8, 2025).

4904-7015-5573, v. 1

*Amiel et al., vs. QR Joy, Inc. et al.,*

71.     The majority of Fume models appear to be young adults, such as in the advertisements below. Findings have shown that a high congruency between the model's perceived age and the consumer's cognitive age predict higher degrees of "for-me" perceptions, perceived affinity between the self and the brand, and positive brand attitudes.[50]



[51]

72.     Young people are more likely to purchase Fume Vapes due to QR Joy's advertising and social media content, which prominently features individuals from younger demographics.

---

[50] Chang, *Chingching, Chronological Age versus Cognitive Age for Younger Consumers: Implications for Advertising Persuasion*, 37 J. Advertising 19 (2008).

[51] *Are you over 21?,* Fume, https://fume.com/ (last visited Apr. 8, 2025).

4904-7015-5573, v. 1

73.     QR Joy has an active presence on social media platforms such as TikTok,[52] Instagram,[53] and Facebook.[54]

74.     Fume has partnered with Yailin La Más Viral, a Latin American music state, to promote their e-cigarette products, further strategically targeting a predominantly young demographic, including many individuals under 21.

---

[52] Fume Vapes by Qrjoy (@fume_Qrjoy), TikTok, https://www.tiktok.com/@fume_Qrjoy?lang=en (last visited Apr. 8, 2025).

[53] Official Fume Vapors (@fumevapors), Instagram, https://www.instagram.com/fumevapors/ (last visited Apr. 8, 2025).

[54] Fume by Qrjoy (@Fume by Qrjoy), Facebook, https://www.facebook.com/fumevaporsofficial/ (last visited Apr. 8, 2025).

*Amiel et al., vs. QR Joy, Inc. et al.,*





---

<hr>

[55] Official Fume Vapors (@fumevapors), Instagram (Oct. 3, 2024), https://www.instagram.com/p/DAr7TUAtsl0/?img_index=1.

[56] *Viral x Fume*, Fume by Qrjoy, https://fume.com/pages/viral-x-fume (last visited Apr. 8, 2025).

26

CLASS ACTION COMPLAINT

*Amiel et al., vs. QR Joy, Inc. et al.,*

## It's Here!

The wait is over! Our exclusive collab with **Yailin La Más Viral**, is now available. Elevate your vibe with bold flavors and a sleek design, made for those who set trends, not follow them. Don't miss out on this limited edition—get yours now!

( Buy Now )

57



58

75.     As a social media influencer and music artist with millions of followers as shown below, Yailin's audience skews heavily toward younger users who engage with digital culture and idolize figures like her.[59]

---

[57] *Id.*

[58] *Id.*

[59] *Yailin La Mas Viral*, Rocnation, https://www.rocnation.com/music/yailin-la-mas-viral/ (last visited Apr. 8, 2025).

CLASS ACTION COMPLAINT

4904-7015-5573, v. 1

*Amiel et al., vs. QR Joy, Inc. et al.,*



60

76.     By leveraging her popularity, QR Joy gains exposure to a vast pool of impressionable young fans who are highly influenced by the endorsements of their favorite celebrities. This marketing tactic allows QR Joy to tap into millions of potential young users, as social media plays a significant role in shaping youth behavior and purchasing decisions. Studies have shown that social media influencers significantly impact teenagers' behaviors, attitudes, and choices, underscoring the potent effect of such marketing strategies on youth consumption patterns.[61]

77.     Using Yailin as a brand ambassador dangerously normalizes vaping among underage audiences, making e-cigarettes more appealing to those who may not have otherwise considered them, while misleading them into using Fume Vapes despite their illegality for their demographic.

78.     Lastly, QR Joy targets young people through advertisements and social media content that depict individuals using Fume vapes in social settings and appearing confident and comfortable, as shown in the advertisements below.

---

[60]     Yailin La Más Viral (@yailinlamasviraloficial_), Tik Tok, https://www.tiktok.com/@yailinlamasviraloficial_?lang=en (last visited Apr. 8, 2025).

[61] Karima Lajnef, *The Effect of Social Media Influencers' on Teenagers Behavior: An Empirical Study Using Cognitive Map Technique*, 42 Current Psychol. 19364 (2023).

CLASS ACTION COMPLAINT

4904-7015-5573, v. 1

*Amiel et al., vs. QR Joy, Inc. et al.,*



79.     Studies have shown that young people are more likely to purchase a product if it is portrayed as something that can help them feel at ease in social situations.[64] QR Joy leverages this insight to attract young buyers.

---

[62]     Official     Fume     Vapors     (@fumevapors),     Instagram     (Jan.     7,     2024), https://www.instagram.com/p/C10IXduOjFj/.
[63]     Official     Fume     Vapors     (@fumevapors),     Instagram     (June     4,     2024), https://www.instagram.com/p/C70QghNNoQM/.
[64]     Shivani Mathur Gaiha, et al., *Use, Marketing, and Appeal of Oral Nicotine Products Among Adolescents, Young Adults, and Adults*, 140 Addictive Behav. 107632 (2023).

4904-7015-5573, v. 1

80.    Defendants' marketing towards minors and young people is intentional and mirrors the successful tactic employed by traditional tobacco companies of the past, who preyed on young people's susceptibility to predatory marketing and tendency to poor decision-making.[65]

81.    Studies show that young people's brains are not fully developed or capable of understanding the consequences of actions, which affects this age group's ability to make good decisions about health and general welfare.[66]

82.    The prefrontal cortex, which is responsible for higher-order cognitive functions such as decision-making, impulse control, and reasoning, continues to develop into the mid-twenties.[67] This means that adolescents and young adults do not process information, assess risks, or make decisions in the same way that fully matured adults do. Thus, this population is vulnerable to e-cigarette advertisements and substance abuse.[68]

83.    One study found that adolescents have low vaping media literacy, meaning they have difficulty determining when vaping advertisements use manipulative imagery and misleading information: "Youths are vulnerable to tobacco companies' advertising promotions and receptive to E-cigarette marketing, which in turn increase the likelihood of future E-cigarette initiation."[69]

---

[65] Leslie Cantu, *National Survey Indicates More Young Adults Begin Tobacco Use with Vaping, Not Cigarettes*, Med. Univ. of S.C. (Nov. 13, 2023), https://hollingscancercenter.musc.edu/news/archive/2023/11/13/national-survey-indicates-more-young-adults-begin-tobacco-use-with-vaping-not-cigarettes.

[66] Mariam Arain, et al., *Maturation of the Adolescent Brain*, 9 Neuropsychiatric Disease & Treatment 449 (2013).

[67] *The Teen Brain: 7 Things to Know*, Nat'l Inst. of Mental Health, https://www.nimh.nih.gov/health/publications/the-teen-brain-7-things-to-know (last visited Apr. 8, 2025); *see also* Sunita Bava & Susan F. Tapert, *Adolescent Brain Development and the Risk for Alcohol and Other Drug Problems*, 20 Neuropsychol Rev. 398 (2010).

[68] David M. Lydon et al., *Adolescent Brain Maturation and Smoking: What We Know and Where We're Headed*, 45 Neuroscience & Biobehav. Rev. 323 (2014).

[69] Hongying Daisy Dai et al., *Vaping Media Literacy, Harm Perception, and Susceptibility of E-Cigarette Use Among Youth,* 63 Am. J. of Preventative Med. 852 (2022); *see also* Maciej L. Goniewicz et al., *Nicotine Levels*

30

CLASS ACTION COMPLAINT

84.     Although QR Joy displays messages on its website stating that the product is intended for individuals aged 21 and over, this does not serve as a meaningful restriction to underage use. Purchasing the Product requires only clicking a banner to confirm age, and there is no requirement for an adult signature upon delivery to receive the vapes.

85.     Through the vast array of flavors intentionally created to attract young adult buyers, and through advertising that depicts young people who are comfortable in social settings, QR Joy markets Fume vapes to young people, implying and suggesting that they can be sold to them, when in fact they cannot. QR Joy therefore, misrepresents a material fact about Fume vapes—that they cannot legally sell these vapes to people younger than age 21.

### III.    Defendants' Advertising and Sale of Flavored Fume Vapes in the U.S. is Misleading, Because the Sale of Fume Vapes is Not Authorized Anywhere in the U.S.

86.     Defendants market and sell flavored Fume vape products, despite the fact that these vapes are not legally permitted for sale because they lack FDA authorization. The advertising, therefore, is misleading about a material fact—that buyers cannot legally purchase these vapes.

87.     The FDA has authorized the marketing of specific e-cigarette products, such as the Vuse Alto pod vape.[70] Fume Vapes are not listed as FDA-authorized e-cigarette products. Marketing or selling e-cigarette products without FDA authorization is prohibited, making such products illegal for sale in the United States.[71]

---

*in Electronic Cigarette Refill Solutions: A Comparative Analysis of Products From the U.S., Korea, and Poland*, 26 Int'l J. Drug Pol'y 583 (2015).

[70]     *FDA Authorized E-Cigarette Products*, Tobacco Education Research Library, https://digitalmedia.hhs.gov/tobacco/print_materials/CTP-250 (last visited Apr. 8, 2025); *see also Searchable Tobacco Products Database*, U.S. Food & Drug Administration, https://www.accessdata.fda.gov/scripts/searchtobacco/ (last visited Apr. 8, 2025).

[71]     *Working with States, FDA Warns More than 100 Retailers for Illegal Sale of Youth Appealing E-Cigarettes, including Geek Bar*, FDA (Dec. 5, 2024), https://www.fda.gov/tobacco-products/ctp-newsroom/working-states-fda-warns-more-100-retailers-illegal-sale-youth-appealing-e-cigarettes-including-geek.

CLASS ACTION COMPLAINT

*Amiel et al., vs. QR Joy, Inc. et al.,*

88.   QR Joy markets, sells, and advertises Fume vapes to individuals across the country, including in this State, implying and suggesting that these products can be sold to them, when in fact they cannot. Since Fume vapes lack FDA authorization, their advertising and sale anywhere in the United States are misleading.

## **CLASS ALLEGATIONS**

89.   Plaintiff Amiel re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

90.   Plaintiff Amiel brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated individuals within the United States (the "Class"), defined as follows: all consumers who purchased Fume vapes within the United States during the applicable statute of limitations period (the "Class Period") and until the date of class certification.

91.   Included in the Class, to the extent necessary, is a subclass of all persons who purchased the Fume vapes in New York during the Class Period (the "New York Subclass").

92.   Excluded from the Class are (1) Defendants, any entity or division in which either Defendant has a controlling interest, and Defendants' legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

93.   There are substantial questions of law and fact common to all members of the Class, which will predominate over any individual issues. These common questions of law and fact include, without limitation:

(a)   Whether Defendants are responsible for the marketing at issue;

(b)   Whether the marketing of the Fume vapes was unfair, misleading, false, deceptive, fraudulent, and/or unlawful;

CLASS ACTION COMPLAINT

Case 0:25-cv-60710-WPD   Document 1   Entered on FLSD Docket 04/11/2025   Page 33 of 44

*Amiel et al., vs. QR Joy, Inc. et al.,*

(c)     Whether the sale of the fume vapes in contexts where sale was unlawful was unfair, misleading, false, deceptive, fraudulent, and/or unlawful;

(d)     Whether Defendants were unjustly enriched due to the conduct as set forth; and

(e)     Whether Defendants' conduct as set forth above injured Plaintiff Amiel and Class members.

94.     Plaintiff Amiel's claims are typical of the claims of the Class. Plaintiff Amiel is a member of a well-defined class of similarly situated persons, and the members of the Class were similarly affected by QR Joy's conduct and are owed the same relief, as alleged in this Complaint.

95.     The precise number of the Class members and their identities are unknown to Plaintiff Amiel at this time but may be determined through discovery.

96.     Plaintiff Amiel will fairly and adequately protect the interests of the Class and has no interests that are antagonistic to the claims of the Class. Plaintiff Amiel will vigorously pursue the claims of the Class and Subclass.

97.     Plaintiff Amiel has retained counsel who are competent and experienced in consumer protection litigation, including class actions relating to false advertising. Plaintiff Amiel's counsel have successfully represented plaintiffs in complex class actions and currently represent plaintiffs in similar complex class action lawsuits involving false advertising.

98.     A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of Plaintiff Amiel and the Class are nearly identical and will require evidentiary proof of the same kind and application of the same laws. There is no plain, speedy, or adequate remedy other than by maintenance of this class action.

99.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because Class members number in the thousands and individual

*Amiel et al., vs. QR Joy, Inc. et al.,*

joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually, and the disposition of this case as part of a single class action will benefit the parties and reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Trial of Plaintiff Amiel's and the Class members' claims together is manageable.

100.    No member of the Class has a substantial interest in individually controlling the prosecution of a separate action.

101.    The prerequisites to maintaining a class action for equitable relief are met. Defendants intentionally target young adult buyers when it is illegal for people younger than age 21 to purchase Fume vapes; Defendants market, sell, and allow the sale of the unauthorized Fume vapes; and Defendants represent that Fume vapes are 5% nicotine without providing additional information. Defendants own Fume vapes, design Fume vapes, manufacture and distribute Fume vapes, and oversee the manufacturing and distribution of Fume vapes. Fume vapes as designed and distributed by Defendants are still in circulation, the representations are live and continue to pose a risk of harm to consumers, and Defendants have a continuing responsibility to mitigate or prevent that harm. Defendants continue to benefit from sales by resellers, including ongoing brand advertising and visibility, licensing fees and royalties, residual profits from inventory sales, and continued distribution and sale of Fume vapes. Defendants are therefore responsible for how the vapes are marketed, labeled, and represented to consumers and are responsible for ensuring issues with the vapes are addressed, including misleading representations and omissions, safety concerns, and regulatory compliance. Defendants therefore have acted or refused to act on grounds generally

34

CLASS ACTION COMPLAINT

*Amiel et al., vs. QR Joy, Inc. et al.,*

applicable to the Class, thereby making appropriate final equitable and monetary relief with respect to the Class as a whole.

102.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for QR Joy. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

103.     Defendants' conduct is generally applicable to the Class as a whole, and Plaintiff Amiel seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, QR Joy's systematic policies and practices make declaratory relief appropriate with respect to the Class as a whole.

104.     Defendants' improper consumer-oriented conduct is misleading in a material way in that the marketing, *inter alia*, induced Plaintiff Amiel, New York Subclass members, and all Class members to purchase and/or to pay the requested price for Fume vapes, and caused them to continue buying the addictive products, when they otherwise would not have started using the products, would not be continuing to use the products, or would not be paying the requested price.

105.     Defendants made the misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

106.     Plaintiff Amiel, the Subclass members, and the Class members have been injured by their purchase of the Fume vapes, which they otherwise would not have purchased and would not be continuing to use, which were worth less than what they bargained and/or paid for, which they paid the requested price for, and which they selected over other products that may have been truthfully marketed.

4904-7015-5573, v. 1

*Amiel et al., vs. QR Joy, Inc. et al.,*

107.    QR Joy's advertising induced Plaintiff Amiel, the Subclass members, and all the Class members to start using and buying Fume vapes, to buy more of them and continue buying them, and/or to pay the price requested.

108.    As a direct and proximate result of Defendants' violation of law, Plaintiff Amiel, members of the Subclass, and all Class members paid for falsely advertised Fume vapes and, as such, have suffered damages in an amount to be determined at trial.

109.    Injunctive relief is also appropriate in this case because Plaintiff Amiel, members of the Subclass, and other Class members have through Defendants' conduct become addicted to e-cigarettes and therefore have a perpetual relationship with these nicotine products and will continue to purchase them. Even if working hard to discontinue vaping, Plaintiff Amiel and other Class members remain consumers and have a strong interest in having full disclosure regarding the vapes. Plaintiff Amiel and other Class members wish to be able to make the best choices among e-cigarettes, in terms of health dangers, accurate description of nicotine, increased tendency for addiction through the use of flavors, and price. Because future harm is likely at the hands of Defendants, injunctive relief is appropriate in this case.

110.    Plaintiff Amiel knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance of a class action.

## CAUSES OF ACTION

### COUNT I
**Violations of the New York General Business Law § 349**
**(On Behalf of Plaintiff Amiel and the New York Subclass)**

111.    Plaintiff Amiel realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

CLASS ACTION COMPLAINT

4904-7015-5573, v. 1

112.    The acts of Defendants, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

113.    Defendants market their Fume vapes to young people, misleading them as to the fact that it is illegal in all states to sell these products to people under 21 years of age.

114.    Defendants market and have sold, and have allowed resellers to market and sell, Fume vapes, misleading consumers as to the fact that these products are not authorized for sale in any state.

115.    QR Joy markets Fume vapes as "5%" or "5% nicotine," misleading customers into believing that the products deliver a lower amount of nicotine and are less addictive than they actually are. This representation is intentionally ambiguous and deceptive regarding a material aspect of the vapes.

116.    Defendants made the misleading statements, representations, and advertisements willfully, wantonly, and with reckless disregard for the truth.

117.    QR Joy has violated § 349 of the New York General Business Law ("NYGBL"), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendants' violation of § 349, Plaintiff Amiel and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

118.    By reason of the foregoing, Plaintiff Amiel and the New York Subclass members are entitled to (1) actual damages and/or statutory damages; (2) punitive damages; and (3) reasonable attorneys' fees, pursuant to NYGBL § 349(h).

*Amiel et al., vs. QR Joy, Inc. et al.,*

## <u>COUNT II</u>
### Violations of the New York General Business Law § 350
### (On Behalf of Plaintiff and the New York Subclass)

119.     Plaintiff Amiel realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

120.     The acts of Defendants, as described above, and each of them, constitute false advertising in that each is misleading in material respects as described herein.

121.     NYGBL § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

122.     NYGBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

123.     Defendants made the false statements willfully, wantonly, and with reckless disregard for the truth.

124.      Plaintiff Amiel and the New York Subclass members have been injured by their purchase of Fume vapes. As a direct and proximate result of Defendants' violation of § 350, Plaintiff Amiel and other members of the New York Subclass have suffered damages in an amount to be determined at trial.

125.     On January 24, 2025, a pre-suit letter was sent to all the Defendants via certified mail that provided notice of the violations of state consumer protection statutes and demanded that within thirty (30) days from the date of the letter, Defendants correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if the Defendants refused to do so, a complaint seeking damages would be filed. Defendants received the letter on but they have failed to take corrective action.

38
CLASS ACTION COMPLAINT

126.    Accordingly, Plaintiff Amiel, on behalf of herself and all other members of the New York Subclass, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendants' acts and practices.

### COUNT III
**Violation of State Consumer Protection Statutes**
**(on Behalf of Plaintiff Amiel and All Class Members)**

127.    Plaintiff Amiel realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

128.    Defendants' unfair, false, misleading, and fraudulent practices in marketing the Fume vapes, as alleged herein, violate each of the following state consumer protection statutes to the extent that Defendants' Fume vaped have been marketed in, and purchased by Class members in, the respective state: Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Ark. Code § 4-88-107(a), (a)(10); Cal. Civ. Code § 1750, Cal. Bus. & Prof. Code §§ 17200, 17500, 17580.5; Colo. Rev. Stat. §§ 6-1-105 (e), (g); Conn. Gen. Stat.§ 42-110b(a); Del. Code Ann. tit. 6, § 2513(a); Fla. Stat. Ann. § 501.204; Ga. Code § 10-1-393(a); Haw. Rev. Stat. § 480-2(a), (d); Idaho Code § 48-603(17); 815 Ill. Comp. Stat. Ann. § 505/2; Ind. Code § 24-5-0.5-3(a); Iowa Code § 714H.3(1); Kan. Stat. § 50-626(a); Ky. Rev. Stat. § 367.170; La. Rev. Stat. Ann. § 51:1405(A); Me. Rev. Stat. Ann. tit. 5 § 207; Md. Code Comm. Law § 13-301(1), (3); § 13-303; Mass. Gen. Laws Ch. 93A, § 2(a); Mich. Comp. Laws Ann. § 445.903(1)(s), (bb), (cc); Minn. Stat. § 325F.69(1); Miss. Code § 75-24-5(2)(e),(g); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat. § 598.0915(15); N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.M. Stat. Ann. §§ 57-12-2(D), 57-12-3; N.Y. Gen. Bus. Law §§ 349, 350; N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-15-02, 51-15-02.3; Ohio Rev. Code

§ 1345.02; Okla. Stat. Ann. tit. 15, §§ 753, 752(13); Or. Rev. Stat. § 646.608(1); 73 Pa. Stat. § 201-2(4); R.I. Gen. Laws §§ 6-13.1-1(6)(xii), (xiii), (xiv), 6-13.1-2; S.C. Code § 39-5-20(a); S.D. Codified Laws § 37-24-6(1); Tenn. Code § 47-18-104(a); Tex. Bus. & Com. Code § 17.46(b)(2), (3),(5),(7),(24); Utah Code Ann. § 13-11-4(1); Vt. Stat. Ann. tit. 9, § 2453(a); Va. Code Ann. § 59.1-200(A)(14); Wash. Rev. Code § 19.86.020; W. Va. Code §§ 46A-6-102(7); Wis. Stat. Ann. § 100.18(1); Wyo. Stat. Ann. § 40-12-105(a)(xv).

129.    Defendants made the misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

130.    Plaintiff Amiel and all Class members have been injured by their purchase of Fume vapes.

131.    As a direct and proximate result of Defendants' violation of consumer protection law, Plaintiff Amiel and all other Class members have suffered damages in an amount to be determined at trial.

132.    On January 24, 2025, a pre-suit letter was sent to all Defendants via certified mail that provided notice of Defendants' violations of state consumer protection statutes and demanded that within thirty (30) days from the date of the letter, Defendants correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendants refused to do so, a complaint seeking damages would be filed. Defendants received the letter on January 24, 2025, but they have failed to take corrective action. Accordingly, Amiel, on behalf of herself and all other members of the Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendants' acts and practices, according to the availability of relief under the applicable statutes.

## <u>COUNT IV</u>
### Breach of Express and Implied Warranty of Merchantability
### (on Behalf of Plaintiff Amiel and All Class Members)

133.    Plaintiff Amiel realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

134.    Plaintiff purchased Fume vapes from resellers inside and outside of this District.

135.    The products were not altered by Plaintiff or by Class members.

136.    The "5%" nicotine label fails to accurately communicate the actual nicotine strength delivered to consumers. Reasonable consumers would not anticipate that such labeling would result in nicotine delivery stronger than that of combustible cigarettes. This misleading labeling renders the product unfit for the ordinary purposes for which it is used, as it prevents consumers from accurately gauging or safely using the product.

137.    By underestimating the nicotine potency, consumers may unknowingly develop nicotine dependence or experience a more severe dependence than intended. This renders the product unsafe for its ordinary use as a recreational vape or as a smoking cessation tool. The misrepresentation of nicotine strength undermines consumer expectations, making the product unfit for its intended purposes.

138.    Defendants, therefore, breached the warranty implied at the time of sale in that Plaintiff and the other members of the Class did not receive goods that were as represented, and the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled, or sold.

139.    Defendants knew that the 5% nicotine labels could cause consumers to underestimate the nicotine strength and addictive nature of the vapes and cause unsuspected

CLASS ACTION COMPLAINT

nicotine dependency—yet QR Joy advertised the products as 5% nicotine anyway, deceiving Plaintiff and the Class.

140.    Defendants also took no action to remedy the inferiority or to cure the breach.

141.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased the products if they knew the truth about them, namely, that they were unfit for use and posed a significant safety risk.

142.    Further, since QR Joy sells directly to consumers on its website, it has privity with consumers.

143.    Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they either would not have purchased the Fume vapes, would have purchased fewer vapes, or would not have been willing to pay the premium price Defendants charged for the vapes.

144.    Plaintiff, on behalf of herself and the Class, seeks compensatory damages, attorney's fees, costs, and any other just and proper relief available under law.

## COUNT V
### Unjust Enrichment
### (on Behalf of Plaintiff Amiel and All Class Members)

145.    Plaintiff Amiel realleges and incorporates herein by reference all preceding paragraphs of this Complaint as though set forth and at length herein.

*Amiel et al., vs. QR Joy, Inc. et al.,*

146.     QR Joy has financially benefited from Plaintiff Amiel and Class Members through the purchase of Fume vapes. It is unjust for QR Joy to retain this benefit when these sales were either unlawful and/or made based on misrepresentations or false advertising by QR Joy.

147.     Plaintiff, on behalf of herself and the Class, seeks financial restitution, attorney's fees, costs, and any other just and proper relief available under law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Amiel respectfully requests that the Court enter judgment in her favor and in favor of the Class as follows:

A.     An order certifying the proposed Class and Subclass; appointing Plaintiff Amiel as representative of the Class and New York Subclass; and appointing Plaintiff Amiel's undersigned counsel as counsel for the Class and all Subclasses;

B.     A declaration that Defendants are financially responsible for notifying Class members of the pendency of this suit;

C.     An order declaring that Defendants' conduct violates the statutes referenced herein;

D.     An order awarding monetary damages, including actual damages, statutory damages, compensatory, and punitive damages, in the maximum amount provided by law under the common law and the statutes named herein;

E.     Injunctive relief;

F.     An order for prejudgment interest on all amounts awarded;

G.     An order awarding Plaintiff Amiel and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

H.     Any further relief that the Court may deem appropriate.

CLASS ACTION COMPLAINT

*Amiel et al., vs. QR Joy, Inc. et al.,*

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**RICHMAN LAW & POLICY**                    **LEUNG LAW PLLC**

_____            _____
Kim E. Richman                              Christopher Leung
(*Pro Hac Vice* to be filed)                *Pro Hac Vice* to be filed
**RICHMAN LAW & POLICY**                     **LEUNG LAW PLLC**
1 Bridge Street, Suite 83                   1 Dock 72 Way, 7th Fl.
Irvington, NY 10533                         Brooklyn, NY 11205
Tel: (914) 693-2018                         Tel: (212) 498-8991
krichman@richmanlawpolicy.com               chris@impact-lit.com

Dated: April 11, 2025                       Dated: April 11, 2025

**MEDINA LAW FIRM LLC**

_____
*/s/ Eric S. Medina*
Eric S. Medina, Esq.
Florida Bar #72179
**MEDINA LAW FIRM LLC**
1200 N. Federal Highway, Suite 200
Boca Raton, FL 33142
Tel: (954) 859-2000
Fax: (888) 833-9534
emedina@medinafirm.com

Dated: April 11, 2025

*Attorneys for Plaintiff Amiel and Proposed Class*

4904-7015-5573, v. 1